Final, I think it's our final oral argument for this morning, Davis v. Allbaugh, 18-6131. Your Honor, may it please the court, I'm Aaron Johnson, appearing on behalf of the appellant, Mr. Phillip Antonio Davis. We've appealed the district court's denial of Mr. Davis's petition for writ of habeas corpus. The principal grounds for the appeal is that the petitioner was denied the right to present a complete defense. The petitioner alleged that there were several different categories of evidence that were excluded that effectively prevented him from leading the state's case against him and defending himself. I would first like to start with the error that the Oklahoma Court of Appeals found regarding the exclusion of evidence, and that was also addressed at the district court level. The district court seemed to also agree that it was error to exclude evidence regarding a witness, in this case, Ms. Signolia Vaughn, evidence that she was not charged with any crime in relation to this incident. While the court of criminal appeals found that it was error to exclude the evidence, they found that the error was harmless beyond a reasonable doubt. The district court applied the Brecht standard and found that the exclusion of the evidence did not create a substantial injurious effect. We challenge that finding that the error was harmless, and the way we do that, first off, is by stating that, pointing out that the evidence of guilt of first degree murder, unlike in Brecht, was not compelling. The state presented a conspiracy theory at trial and alleged that petitioner and Ms. Vaughn conspired to murder a man, but in every proceeding after the trial, the state has said that the evidence proved that the appellant didn't know who was attempting to break into the home at the time of the shooting, which completely contradicts the whole state's trial theory regarding it. Was it the defense theory at trial that the defendant did not know who was coming in the window? Yes, Your Honor. I think the way I read the court of criminal appeals decision was that your evidence didn't matter because the testimony at trial was that your client didn't know who was coming through the window. So all these inferences about the person coming through the window didn't matter because if he didn't know who was coming through the window, all these things about the person coming through wouldn't have mattered, right? Well, the court didn't just say that my client didn't know. They said that my client, also the person who had invited him to the home, Signoria Vaughn, didn't know, and that was the issue because at trial, my client was invited into this home by Signoria Vaughn. He was awakened from his sleep, and she told him somebody was breaking in through the window and that once he saw somebody actually coming in, that's when he fired the shot. The state alleged that – so our theory was that based on everything my client saw, which is Ms. Vaughn saying someone's breaking in, calling 911, putting the kids into the closet as though she perceives a threat, that he recognized that and that that is what caused him to believe that he was under threat and that the dwelling was under threat. Why then did he not tell that account to the police when they came? Why did he make up this story? Well, he initially denied – he initially said that he heard a boom. He didn't say that anyone else shot, and the reason was because he was a felon in possession of a firearm. And also he just – as we pointed out, we cited Addison v. State for the proposition that in a situation like this when you're faced with an unknown intruder, the legal ramifications of your actions is not something that a layperson would know. So he was afraid – if he had admitted to the shooting, he was admitting to a crime, a felon in possession of a firearm. So we conceded that initially he did deny that he actually did the shooting. He said he heard a boom. But within the same night, within hours, he told the story. He did tell the story about Ms. Vaughn and how she had invited him over and how she had awakened him and told him that there was an unknown intruder. So regarding the harmless error analysis, our position is that if we could have gotten to evidence the fact that Ms. Vaughn was not charged, this would have contradicted the entire state theory. The state argued during the closing argument that Signalia Vaughn conspired with my client to commit a murder. Well, we should have been able to point out to the jury if the state actually believed they could prove that, then they would have charged her with the murder also as a conspirator. And also they would have charged her with something to that effect. So for that reason, we think it's clear that it was not harmless. It would have undercut the state's entire ability to make its claim that she was a conspirator. Was it statute of limitations? Did it run that they couldn't file against her later? No, Your Honor. So they could have filed at any time? Yes, they could have. It's just a timing question. They hadn't yet filed against her, right? Right, and they still haven't. But that would have been a reason. But after the jury's gone, we don't care about any of the evidence, right? We're just arguing that if we would have had the ability to show the jury that, hey, the state knows better than what it's saying now. They know there was no conspiracy and that's why they didn't charge this. But he wasn't charged with conspiracy, was he? No, he was not. But the state's theory, the way that they proved for malice, forethought, premeditation, deliberation, the way they did that is to say that he planned this attack. That's what they argued to the jury. They never argued that it was murder in the first degree simply because he shot an unknown intruder. That was not the argument. That was not the theory of the state. The state's theory was that there was a conspiracy between him and the homeowner. In the state's presentation of its case, an argument or somehow ooze into some of the questions, did they ever use the word conspiracy? They say they set him up. They set him up. I'm not going to go through the record and see that they argued that this was a conspiracy between the two people. Using that word? They did not, that I recall, use the word conspiracy. They used the word plan. They used the word set up. They said my client laid in wait as opposed to what they've said ever since, which is that he didn't know the identity of the shooter. That's the argument that they've used to justify excluding the evidence. But as we stated at the trial court level when we were arguing for the admission, the whole state's theory is that these people did know who this was. I'm not sure they say that your client didn't know. I think they're saying that was your defense, that he didn't know. Your Honor, if you look at our reply brief, I quoted them in the first part. At the district court level in this habeas action, they said it's thoroughly argued herein the evidence at trial clearly proved that the petitioner did not know the identity of the person who was attempting to break in through the window when he fired the shotgun. And they just made statements like that repeatedly. Let me ask you, though, about the excluded evidence. Ordinarily, you can question, the defense can question a prosecution witness to show bias or motive to lie was that the government didn't charge the person. So the person is getting off easy. Right. And so that would be an appropriate reason to question her. Have you been charged? And then you can argue to the jury that that's why she said these bad things about my client. She wanted to wipe her hands of it, etc. But the theory you have for why it was harmful is not a proper evidentiary purpose. I don't think you're allowed to put on or tell me if there's some some evidentiary rule that allows you to put on evidence that the government really doesn't think it has that good a case. Who cares what the government thinks? We do. We require prosecutors not to say, I think the defendant is guilty. You have to put it in terms of the evidence here should convince you that the defendant is guilty. Do you have any authority for putting on evidence for the purpose of showing that the prosecution doesn't think it has a strong case? Well, the I would say those two things are tied together. We also argued that the evidence was improperly excluded because of the bias issue. And the reason that we asked her to read cross-examination about whether she had been charged is because during her direct testimony, her redirect, she repeatedly stated she didn't remember certain things. She didn't remember conversations, things that the government didn't say. You should hate her. Literally say the closing argument should hate her because she didn't remember these things and use the fact that she claimed to not remember certain things that she likely did remember as evidence of a conspiracy. So the the the evidence had more than one use. And if I could, I would like to move to the exclusion of the evidence. Evidence was excluded by the decedent's mother that she had witnessed an altercation between the decedent and Sanoia Vaughn, who had been staying with Sanoia Vaughn testified is the day before the incident happened. The mother said she didn't remember. She thinks it was early in the week. Well, that evidence went directly to the point that the state was trying to use the mother to show, which is that he lived in the home at the time and that when he was breaking in through the window, he had some belief that he had a right to do that. And we wanted that we were attempting to ask her, well, didn't you see an altercation where she kicked him out shortly before he was breaking into the house? Because what we're trying to do is the state's trying to create an inference in the jury's mind that this man was breaking into the house because he thought he had a right to do so. So so the. The owner of the house had already testified to this altercation, and you wanted the mother to corroborate that by saying she heard it, although when she testified, she gave an earlier date, right? In the same week, says she believes she says she didn't remember, but she believes it was earlier in the week. And this the state said that Sanoia Vaughn, who did testify that she had told him he was kicked out, was lying about that. And when she testified, did she say her mother was present at the time? They had the argument that his mother was present. The deceased. OK. Yes, she did. She did. But the mother was not allowed to testify about it at all. Also, finally, the evidence was excluded of regarding the decedent's toxicology for consecutive PCP. The evidence showed that he had a very high level, extremely high level of PCP intoxication. There was a glass vial found near him and a smoked cigarette. We were attempting to show that. What you already talked about was admitted. The fact that he had a high PCP level. No, it was not. That was not admitted. No, that was excluded. Go ahead. And your purpose in. One purpose was to show that was to refute the state's claim that he was he was attempting to break into the home, that he was in his right mind and that he had did not have a nefarious purpose. We argued in our appeals brief that the rest guess that essentially was him smoking the PCP and then attempting to break in because he intended to capitalize on the threats that he had made to signal your bond within a day earlier. And those things are also excluded on hearsay grounds. Capitalize on her threats. I'm not sure what you do to execute the threats that he had made. He's breaking into the home after he told this lady he's going to burn her house down and she's never going to ever live in Oklahoma again. And what he's doing right before he breaks in, he smokes PCP and he tries to break into the home. So what we're trying to do is refute the state's argument that this is just some good guy, which is what they were trying to present to the jury, who just is coming in, breaking in through this window because he thinks he has a right to do so. And we were going to show the jury that good people don't do that. Good people don't smoke PCP and then break into a house. A person who's made threats to a woman, threatened to kill her, threatened to burn her house down, potentially with her children in the house, then smokes PCP and breaks into that house has a nefarious purpose and not something. And he's not acting rightfully. So we were attempting to refute the state's case. And I would like to reserve the remainder of my time. Four seconds. May it please the court. My name is Keely Miller and I represent the respondent of Pelley, Joe Albaugh. I'll start where opposing counsel. Can I take you to one place? I want you to start. Can you tell me what evidence there was of malice for the malice murder? Certainly, your honor. The state, the state's theory was, of course, that Mr. Davis picked up a loaded shotgun, aimed it at the window and fired with malice and without legal justification. And evidence of malice comes directly from his interview with Detective Abel. For 17 minutes, he claimed that he was not the shooter. He only heard a boom. He gathered the children in the closet. He just denied being the shooter. And only after Detective Abel said, we're going to find out somebody in that apartment fired the shot. We're going to find out who it was through gunshot residue. And the detective was the first to mention this looks like a case of this could be a case of self-defense. And it was only at that point that Mr. Davis admitted to being the shooter. So are you saying that denial, per se, is evidence of malice? It's certainly, and malice doesn't mean he's upset with the victim. It doesn't mean he has a motive. It doesn't mean he has a reason. It's just a deliberate intention to take a human life. And his denial. How does denial further that? It shows he has no reasonable fear of the victim or somebody coming into the apartment. Wait, wait, wait. I thought in Oklahoma law, you have a right to shoot somebody breaking into your home without consent. Do you not? That is the stand your ground law, Your Honor. That is the stand your what? The stand your ground law. And that is, Mr. Davis was not entitled to that defense. That defense only applies if the defendant is not engaged in any illegal conduct at the time of the shooting. And in this case, Mr. Davis was a convicted felon. He was prohibited from possessing a firearm. And that negates, so a convicted felon can't stand his ground in Oklahoma. He cannot, Your Honor. The Court of Criminal Appeals has ruled on that issue. Can that person stand their ground with something that they're lawfully in possession of? If it's, yes. Correct. If it's not, yes. It's just that you can't stand your ground with a shotgun. You can't, Mr. Davis could not stand his ground with a firearm. Okay. But getting back to this, I don't understand how the fact that you, the police are conducting an investigation, and the defendant says they didn't do it, how that is evidence of malice? It shows his state of mind. It's a guilty conscience. And it shows that he's trying to hide the fact that he shot this person. How is that, I mean, I would put that under kind of a natural human behavior in that pile rather than in the malice pile. Well, Your Honor, there's also... Is there a case law in Oklahoma that says that some evidence of malice could be denial of the charges? I know that there is consciousness of guilt case law, Your Honor. And in this case, that is a clear indicator. So denial is the substantial equivalent of consciousness of guilt? In this case, yes. And why is this case different than what seems to me not the case? Why does that make it so? Well, I should... This wasn't the only evidence of his malice, Your Honor. All right, then if you want to go on to the other evidence, fine. I want to hear the other evidence. And, of course, he claimed that... At trial, he claimed he was protecting himself and his son in the habitation. But the fact is he fired one shot through the window. He had three other shells in that shotgun. He fired one because despite the fact, the claims, they don't know who's out there, they don't know how many people are out there. He fired one shot. Even though he had three more, he hid the gun before the police came. And that's further evidence of malice. And then there's also... I mean, isn't that along the same lines as denial, though? I mean... Oh, my Lord, I shot this guy, and I'm afraid of what's going to happen to me because of it, so I'm hiding... I'm a felon, so I'm hiding the gun. And that, Your Honor, is a conflicting inference of the evidence. And when this court... You know, Mr. Davis claims, I denied because I'm a convicted felon and I can't have a shotgun. And that's... And when this court is faced with conflicting inferences, this court has to defer to the... It has to presume that the jury resolved that inference in favor of the prosecution. But wait a minute. If the inference is an inference that not only no reasonable jurist would draw, but no reasonable person would draw, because one does not suggest the other, that's, I think, our point is... How does hiding a weapon indicate that minutes before there was malice in the shooting of the person? Well, there was also evidence that Mr. Davis brought this shotgun with him. He insisted on bringing the shotgun with him. He did not... When he told Ms. Vaughn... We're going on to different evidence now, so... Yes, Your Honor. He purposely brought the weapon. He purposely brought the weapon, even though Ms. Vaughn asked him not to. And it's just... The state's theory was always that he fired with malice without legal justification. But the evidence, as it developed at trial, and much of the evidence that was brought out on cross-examination by defense counsel, it did lead to the inference that Ms. Vaughn and Mr. Davis had talked about this before and had set Mr. Mustin up to be shot. But it doesn't make sense that she told him not to bring the weapon. Well, and that came directly after she spoke to Mr. Mustin for 17 minutes on the phone. After she hung up with Mr. Mustin, she texted Mr. Davis and said, Don't bring the weapon. He said, I'm not coming without it. And she finally conceded for him to bring the weapon. Is the evidence that she told him, don't bring the weapon, I talked to Mustin and it's all going to be okay, or is it just after she talked to Mustin, which he presumably did not know about, she said, don't bring the weapon? I mean, because I'm worried that some of what you're talking about might be based on her subjective thoughts, that there's no evidence that the defendant was aware of. I'm unaware there's not any evidence, direct evidence, that she told Mr. Davis of that conversation with Mr. Mustin. But I think based on the other evidence, it can reasonably be inferred that she did so. What was the evidence that they were setting him up? And when I asked that, tell me, who said it, or if it was a text? There was evidence that Ms. Vaughn regarded Mr. Davis as her guardian angel. And they had an intimate relationship, and she testified to all these various problems and this great fear she had of Mr. Mustin, the victim. And it was just not reasonable to believe that she did not tell Mr. Davis about those fears. Okay. Is there any direct evidence, though, that she did? No, Your Honor, there's no direct evidence. It's more in what she didn't say. And if I may switch gears briefly to— Well, only have you exhausted the list of evidence of malice. I would— How about awareness of the victim's identity? And he claims that he didn't know the victim's identity. And it just—under these circumstances, it wasn't reasonable for him to just pick up a firearm without ascertaining who he was shooting and whether they had a nefarious—whether that person had a nefarious intent. It just wasn't reasonable. I thought there was—that Oklahoma did produce evidence that, in fact, Mr. Davis was aware of the victim's identity. Yes. And that—I mean, that is just an inference on the evidence. And what is the evidence from which that inference is to be drawn? That Mr. Davis knew it was Mr. Mustin's identity? That's the inference. What's the evidence? Okay. Yes, I was clarifying. It's that Ms. Vaughn testified that she had—it was her fear of Mr. Mustin. She had just bought a gun the night before with Mr. Davis's help. It's the fact that they both told the same lie. Okay, so when you say the awareness of his identity, it's not awareness of his likeness or how big he is. It's awareness that this person could well show up tonight and be mean, right? It's— We're not talking about the identification, the facial identification. If he's showing up and being mean, it's because they have provoked this confrontation, and it shows that they are not in fear of him. They are inviting him to this altercation. All right. For my part, I'll let you go. Okay. Can I—I mean, has the state basically bought off on the idea at this point that the trial evidence showed that he didn't know who was outside the window? I mean, because there are multiple statements in briefs where it seems to say that. The evidence proved Petitioner did not know who was breaking into Ms. Vaughn's apartment at the time he fired the shotgun. The evidence proved neither that Ms. Vaughn nor Petitioner knew who was outside the window at the time of the murder. The evidence would have to show, at the very least, that he knew it was the victim he was shooting. What's concerning to me, it seems like—I mean, things may be—at trial, there was an attempt to show that they knew who the victim was, but that since then, in response to arguments, the state has sort of shifted positions to say that they didn't know who was outside the window, and they wanted to do that in order to cut against some of the arguments that the defense is making. I mean, do you agree that basically you've sort of switched positions? Not necessarily you specifically, but the state? I don't agree with that completely, Your Honor. Of course, the state's theory was he shot with malice for thought without justification. The defense evidence was, at all times, we don't know who that person is out there. Ms. Vaughn and Mr. Davis did not know who that person was. The trial evidence showed otherwise. I mean, was it the state's theory that there was some—it was just like a random shooting? There was someone outside the window, and he's like, ha, boom, got him, don't know who it is? Or was it that's Mustin, he's trying to break in, we're waiting on him to get here, and I'm going to blast him? Because the arguments go in both ways, depending on the issue. And I think the facts are peculiar. It's hard to see this when you go on that theory that this is a malice murder case. And it's still a malice—even if Mr. Davis did not know who's out there, it's absolutely still a malice case. Like the bar exam question of driving down the road and sticking your pistol out the window and shooting it and killing someone. It can still be, like, depraved mind, right? Well, this is not depraved mind. This is malice. But you say even though they don't know who this person is out there, there can still be malice. And yet the only two things that I heard you say that made any sense to me about what malice was, that he brought the weapon, which the purpose is because they know who's going to be coming in the window, and the provocation of the victim means they know he's going to be coming in the window. And that's inconsistent with the theory that they can't get this evidence in. Because their theory is they didn't know who it was. And the state only had to prove four elements. And it didn't—if the state's theory changed based on that trial evidence, it still—it didn't have to prove a motive. It didn't have to prove a conspiracy, which the record never mentions the word conspiracy. It only had to prove the death of a human. That death was unlawful, committed by the defendant with malice of forethought. And I would just reiterate that it's—the inquiry under Jackson v. Virginia is not to reweigh the evidence, but if the jury—if any rational fact finder could find that evidence sufficient, this court must uphold it. Let me—your time's up, but I've been perplexed ever since you said earlier this morning, which I don't recall in the briefs or in any of the prior opinions, mentioning that a convicted felon does not have the right to defend—does not have the right to stand his ground. With a gun. With a gun, yes. Which would explain why they didn't charge her, because she did have a right to defend her home. So I guess she can conspire. Maybe—I don't know. Maybe that was their theory. But it didn't—if that's the case, it really didn't matter whether he knew or didn't know who was breaking in. He intentionally killed somebody, and that's all you need to do, because the only defense he could have is self-defense, which wasn't raised. So this makes it—eliminating the stand your ground defense seems to me to eliminate all the complications of this and make the elements of the crime pretty obvious. But I want to hear from you, from opposing counsel, because that really surprised me when you brought that up. And if I may just briefly— Yeah, yeah. I said that because I wanted your response. Well, the stand your ground was discussed at one of the pretrial hearings, and defense counsel conceded early on that the stand your ground was not available to Mr. Davis in this case. So it was never an issue on appeal, because it was—everybody agreed, all of the parties agreed, that stand your ground was not a defense in this case. So what could be the defense? If he shot the person intentionally, and maybe there's a question whether he intended to kill the person as opposed to scaring the person away, maybe that was the defense. What possible defense could you have if you don't have stand your ground as a defense? And his jury was instructed on self-defense, defense of others, and defense of habitation. Defense of elders? Defense of others. Of others. That would be his son. Statutorily, he could defend his son with deadly force if he had a reasonable fear. And so the jury was instructed on all of those defenses. So the stand your ground is a separate defense from self-defense, protection of others, protection of property? Depending on the situation, it can be an immunity to prosecution. The stand your ground? Yes. Okay, okay. I'm sorry. So the defenses that jury was instructed on were self-defense, defense of others, and? Defense of habitation. Oh, so you can defend your habitation. That's what I asked about before. I'm sorry. But not with a gun. Yes, if you have understand your ground. This individual could not defend a habitation with a gun. This defendant, understand your ground, the reasonable fear is presumed by the act of an unlawful or forceful entry. And so when a person acting lawfully shoots an intruder, that reasonable fear is presumed. Under defense of habitation, defense of habitation is much like self-defense or defense of others in that the jury has to find that he had a reasonable fear, the defendant in the same view and circumstances of that defendant. The fear is not presumed. A fear of what? A fear that this person is going to come into my habitation or the fear that this person is going to do something to the habitation? Both. Both. For defense of habitation, it's... So how could the jury not find that he was trying to... The only way they could find that he wasn't trying to defend his habitation then would be if he thought the person who was coming in was someone who had a right to come in. And so they would have to, the jury would have to find to convict him on that theory to overcome that defense. Wouldn't the jury have to find that he knew who was coming in and it was someone who had a right to come in? Or, and that's, yes, the jury could find that and the jury could also... Isn't that inconsistent with the arguments made from time to time by the prosecution that we agreed that the defendant didn't know who was coming in? I'm very confused right now. Let me see if I... Yes, thank you. The point is you're trying to distinguish between the general issues in the case and the issues upon which the defendant based his defense. And the defense was based on, I didn't know what was coming through. And if that's your defense, Mr. Davis, then your attempt to put in evidence of this dispute between Ms. Vaughn and the intruder is wholly irrelevant to your theory. Correct. And it's that cubbyhole type, this is your claim versus the universe of issues in the case. Yes. But it's totally relevant to the prosecution's argument, to the prosecution's theory, because the prosecution's theory could only be that the defendant knew who was coming through. And if that's the case, I don't see why the defendant can't put on evidence to show that... To help the prosecution? No, to counter the prosecution's theory. It may not be your theory of defense, it's not what you're saying happened, but it counters what the prosecution has to prove. The prosecution would have to prove to overcome the defense of habitation. Tell me what I'm missing. I disagree, because under the defense of habitation, he has to have a reasonable fear of a felony being committed upon the dwelling. And that's where the defense of habitation is distinguished from the stand your ground. Is the stand your ground, under stand your ground, the shooter does not have to determine the intruder's intent for the fear to be reasonable. And you don't think any reasonable person would think it's reasonable to think that someone I don't know who's breaking into my home without consent is going to commit a felony when they're in the middle of the night? I mean, how can the jury reasonably reject that defense? Because he denied being the shooter. For one, he denied being the shooter. And so this court must presume that the jury found his denial was evidence that he didn't have a reasonable fear of a felony being committed upon that dwelling. Okay. The court has no further questions. I would just request that you uphold the district court's decision. Thank you. Thanks. Let me start by asking a legal question. Do you agree that as a convicted felon, he could not take advantage of the stand your ground defense? Yes, Your Honor. And the defensive habitation statute is a different statute, and that was the statute that we relied upon and the jury was instructed on. And that requires belief, reasonable belief, that someone's coming into your home to commit a felony? The language is to commit a felony upon the dwelling or within the dwelling. Okay. That's the language of the statute. Mr. Johnson, let me tell you, I'm just so confused. It seems to me that if you're objecting to not putting on evidence about this banning of the victim from the house and you can't come back and everything, which evidence you say that you were prejudiced for not getting in, right? How does that evidence do anything but help the prosecution? Well, the evidence that we're complaining that was being excluded was that the decedent's mother was present when he was banned from the home. And that was to counteract the state's theory that he thought he had a right to break in at the time, that the decedent thought he had a right to break in because he lived there. And that's why the state excluded the altercation where he was kicked out. And that's why they excluded the fact that he smoked PCP before he broke in. And they excluded the specific threats that he had made to her that he was going to come and burn her house down. Let me clarify one thing. The court allowed in the testimony of the homeowner, I'm terrible on names, that she had an altercation and told him he couldn't come in. Yes. But the only reason they excluded the mother's testimony was because she said this happened a few days earlier. Yes. And she also said that the victim had spent the prior night at the home. Is that correct? I don't think that she said that he spent the prior night at the home. Okay. I don't believe that she said that. And finally, and while the state did allow Ms. Vaughn to testify that she had this altercation, they excluded the specific threats that the decedent made, that he was going to burn her house down, that she was never going to be able to live in Oklahoma again. The only reason, to answer Judge Murphy's question, the only reason that we needed this evidence in is because of the state's theory. We needed to counteract it. If the state had come in, we've conceded that, and said what they had said at the preliminary hearing, which is that he fired a shotgun at this person without knowing who was there, then we wouldn't have needed to talk about anything that had happened in the preceding days. But the state had a theory that they were trying to build that, oh, they planned this murder. And what evidence did they use? They used the fact that, for example, she bought a gun. Well, we needed to show, why did you buy that gun? It was because this person had threatened your life. So it's, you know, the lawyer had to make a strategic decision. Good for some things for Mr. Davis and not so good for other things for Mr. Davis, right? No. Nothing that we were trying to get in was harmful for Mr. Davis, in our view. The fact that he had threatened the woman's life and was now breaking in the window after smoking PCP, that's what we were doing to counteract the state's theory that he was trying to break in because he thought he had a right to do it. Was there any evidence that the defendant knew? Thank you. No, I'm sorry. Okay. We were sharing our confusion. Oh, okay. I thought I was exceeding the limits of the youngest judge's rope, you know. No, you're an equal. Was there any evidence that your client knew about the threats and altercation between the victim and, I can't remember the lady's name. Signal Yvonne. Yes. No, there was not. Okay. None of those specific threats. She testified that she told him she was afraid that her house had been broken into previously and that she was fearful. But there was no evidence that he knew specifically that that's who was coming through the window. No, there wasn't. That the victim was the person coming through the window. Correct. Okay. Did you have something more? Because she went over a bit. You've got to, if you want another minute. Yeah, I will point out that you all are confused. I'm also confused. And I was there and I've been arguing the case from the beginning to now. And I'm confused about how you go and say that a person planned with another person to murder a person to set them up to break into a home. And then you argue at every stage after that, that the evidence clearly showed that they didn't know who it was. And the reason the state did that is because they acknowledge that if the theory is, okay, these people had an idea of who this was coming in, then everything that they knew about that person would become relevant and admissible. And another problem, another thing that is confusing about the case is that it's the knowledge of the homeowner, Miss Vaughn, that was actually more relevant than my client's knowledge. Because the essentially the state was arguing that Miss Vaughn was the one who was setting him up. And then they wanted the jury to just infer, even though as counsel just admitted they didn't have proof that she had told him about any of this. They just wanted the jury to infer that he must have known. But Miss Vaughn's knowledge and what she knew and whether she was actually afraid, the state actually said the words, she's faking danger. So we had to show if we were going to refute the state's theory that she wasn't faking anything. She was afraid. And she testified that one of the reasons she was afraid was she didn't know who was there. And you can't know who's breaking into a home if you can't see him. You can't know for sure. So the standard can't be that you know. But she did testify that one of the reasons she was afraid is because she knew that it might be this man who had threatened her. And that's what the that's the type of evidence that was kept out. Thank you. Any questions? Well, that was an interesting argument. Well done, counsel. We'll have to figure it out. Thank you. Counselor excused. Case is submitted and court is adjourned.